732 So.2d 408 (1999)
Patrick ROONEY, as Personal Representative of the Estate of Maria Leonor Dingee, Deceased, and C.M., By and Through her next best friend, Carlos Motoa, her father, Appellants/Cross-Appellees,
v.
Lawrence E. HANNON, M.D., P.A., Lawrence E. Hannon, M.D., Cecil S. Sherk, M.D., P.A., Cecil S. Sherk, M.D., Hugh G. Steele, M.D., P.A., and Hugh G. Steele, M.D., Appellees/Cross-Appellants.
No. 97-0920.
District Court of Appeal of Florida, Fourth District.
April 14, 1999.
Rehearing Denied June 14, 1999.
*409 Joanne Fanizza of Law Offices of Joanne Fanizza, P.A., Fort Lauderdale, for appellants/cross-appellees.
Paul H. Field of Lane, Reese, Aulick, Summers & Field, P.A., Coral Gables, for Appellee/Cross-Appellant-Lawrence E. Hannon, M.D., P.A., and Lawrence E. Hannon, M.D.
Warren Kwavnick, and David Cooney of Cooney, Haliczer, Mattson, Lance, Blackburn, Pettis & Richards, Fort Lauderdale, for Appellee/Cross-Appellant-Cecil S. Sherk, M.D., P.A., and Cecil S. Sherk, M.D.
Kristin A. West, and K.P. Jones of Jones & Wolfe, Fort Lauderdale, for Appellee/Cross-Appellant-Hugh G. Steele, M.D., P.A., and Hugh G. Steele, M.D.
GROSS, J.
This case arose out of the death of Maria Dingee. The contention of the lawsuit filed by her personal representative was that Dingee worked as a housekeeper at the office of the appellee physicians, that she was stuck by a needle improperly disposed of in a biohazardous waste container, and that as a result she contracted HIV and ultimately died from AIDS related complications. The appellees vigorously contested liability at trial, arguing that the needle stick never occurred and that Dingee was HIV positive before coming to work at their office. The trial in this case began on January 6, 1997 and the jury returned a defense verdict on January 30, *410 1997. The parties called 34 witnesses which included depositions read into evidence, and videotaped depositions. The trial transcript is 4210 pages long.
We write primarily to address one issue. After the jury retired to begin their deliberations, the trial judge discussed an attempt to locate a missing exhibit and counsel's desire not to send the exhibits back to the jury room until all of the exhibits were located. The court expressed concern about the closing argument of the plaintiff's lawyer. Although the defense had not objected during the closing argument, the judge indicated that certain statements by the plaintiffs lawyer were grounds for a mistrial and that if there were a plaintiffs verdict, the court would entertain post-trial motions to set the verdict aside.
Shortly after the court began speaking with the lawyers, the jury buzzed, but the buzzer was not answered until the judge had finished speaking. After the bailiff responded to the call, he returned with a note from the jury that said, "We can hear you. Are you having trouble with the exhibits?" The jurors also indicated that they were anxious to deliberate and that they wanted the court to provide them with exhibits, an easel, and markers as soon as possible. Plaintiff's counsel made no objection or motion at that time; after the defense verdict, she argued that this incident formed the basis for a new trial or a jury interview. The trial court denied both motions.
Because she failed to object or otherwise alert the court that a problem had occurred with the jury, plaintiffs lawyer waived any objection to what occurred in the courtroom. Where a lawyer knows of an incident potentially compromising the jury before a verdict is returned, but fails to object or alert the court until after the verdict is announced, the incident may not be raised as a ground for a new trial. As the third district held in Eastern Air Lines, Inc. v. J.A. Jones Construction Co., 223 So.2d 332, 333-34 (Fla. 3d DCA 1969):
As a general rule, if a party obtains knowledge during the progress of the trial of acts of jurors, or acts affecting them, which he shall wish to urge as objections to the verdict, he must object at once, or as soon as the opportunity is presented, or be considered having waived his objection.

(quoting 89 C.J.S. Trial § 483 (first set of italics supplied)).
The second district applied this rule in Hargrove v. CSX Transportation, Inc., 631 So.2d 345 (Fla. 2d DCA 1994), a case where it was discovered that the bailiff had erroneously delivered the trial judge's marked up copy of the jury instructions to the jury room. When the mistake was discovered, both parties agreed that the court should retrieve the instructions. Neither side objected or requested a curative instruction. After a verdict for the plaintiff, the defendant based a motion for new trial on the delivery of the marked up jury instructions to the jury room. The second district reversed an order granting a new trial, holding that the defendant's "objection was untimely because it was not made until after the jury had delivered an adverse verdict." Id. at 346; see also Walt Disney World Co. v. Althouse, 427 So.2d 1135, 1136 (Fla. 5th DCA 1983) (involving improper contact between a witness and a juror).
Analogous trial situations require a timely objection to preserve an issue for a motion for new trial. Dueitt v. State, 491 So.2d 1258 (Fla. 1st DCA 1986), is a case involving misconduct of a juror. A defendant and a prospective juror knew each other, but the juror did not disclose the acquaintance during voir dire. The first district held that by remaining silent while knowing that a potential problem existed with the juror, the defendant had waived the right to object to the juror's misconduct.
Here, neither the defendant nor his counsel promptly and timely brought the *411 matter of possible juror misconduct to the attention of the trial court; rather, they waited until after the matter had been submitted to and decided by the jury. Defendant, having elected to trust this jury rather than timely raising the issue before additional time was consumed in the trial, will not be heard to raise the issue after conclusion of the trial and announcement of the verdict.
Id. at 1259.
Similarly, in United States v. Nance, 502 F.2d 615, 621 (8th Cir.1974), the defense first learned of a potential problem when the alternate juror, who had just been excused, "told defense counsel that the jury had been discussing the case throughout the trial." It was not until after a guilty verdict was rendered that the matter was first drawn to the trial court's attention. The eighth circuit held that a "party may not stand idly by, watching the proceedings and allowing the Court to commit error of which he subsequently complains." Id. at 621 (citations omitted); see also United States v. Morris, 977 F.2d 677, 685 (1st Cir.1992); United States v. Bolinger, 837 F.2d 436, 439 (11th Cir. 1988); United States v. Dean, 667 F.2d 729, 733-34 (8th Cir.1982); Snook v. State, 478 So.2d 403, 404-05 (Fla. 3d DCA 1985); Walker v. State, 330 So.2d 110 (Fla. 3d DCA 1976).
Timely objections have also been required to preserve error in cases where judges have had contact with jurors outside the presence of counsel:
The general rule is that misconduct by a judge in connection with a deliberating jury, even if of the nature that would require setting aside the verdict if timely brought to the court's attention, is not a post-trial ground for a new trial where the misconduct was known to the moving party or his counsel before the return of the verdict.
Nissan Motor Corp. in U.S.A. v. Padilla, 545 So.2d 274, 276 (Fla. 3d DCA 1989); see also Sears Roebuck and Co. v. Polchinski, 636 So.2d 1369 (Fla. 4th DCA 1994); Eastern Air Lines, Inc., 223 So.2d at 333-34.
Two separate rationales underlie the requirement that a party timely object to conduct affecting a jury in order to preserve the issue for a motion for new trial or appeal. First, a timely objection provides the trial court with the opportunity to salvage a trial by ridding the jury of any improper influences through reinstruction or curative instruction. See Hargrove, 631 So.2d at 346; Eastern Air Lines, 223 So.2d at 334. In this case, a timely objection would have permitted the trial court to have questioned the jury to determine what they heard, if anything, and to fashion a curative instruction if one were appropriate. Second, it is simply unfair to allow a party to hold back an objection like a trump card, ready to be played in the event of an unfavorable verdict. See Hargrove, 631 So.2d at 346; Nissan Motor Corp., 545 So.2d at 276; Walt Disney World, 427 So.2d at 1136.
We do agree with the appellant that the trial court erroneously allowed defense counsel to cross-examine two relatives about the illegal immigration status of some of the decedent's family members. The plaintiff's lawyer first broached the issue of immigration status by her contention that Maria Dingee married David Dingee out of convenience in 1984 to obtain a favorable immigration status. The plaintiff's attorney was trying to distance the case from David Dingee, who practiced a high risk lifestyle for AIDS, even though his HIV tests were negative. However, there was deposition testimony that the marriage was based on love. The defense was entitled to broad latitude in trying to establish the nature of the Dingees' lifestyle together, if any, especially since she did not initiate a divorce action until March, 1991, about a month after she was first diagnosed with end stage AIDS. This latitude did not extend to question the members of Maria Dingee's family about their immigration status.
*412 Any errors in the admission of testimony concerning the immigration status and the deposition of David Dingee were harmless. They did not become the feature of this lengthy trial. In this regard, we defer to the superior vantage point of the trial court, who considered these issues on the motion for new trial. If reasonable people could differ as to the propriety of the action taken by the trial court on the motion for new trial, then the action is not unreasonable and there is not that abuse of discretion necessary for an appellate court to set aside the trial court's ruling on the motion. See Allstate Ins. Co. v. Manasse, 707 So.2d 1110 (Fla.1998); E.R. Squibb & Sons, Inc. v. Farnes, 697 So.2d 825 (Fla.1997). As the supreme court recently stated in Manasse, 707 So.2d at 1111:
The judicial determination on a motion for a new trial is a discretionary act of the trial court:
When a motion for new trial is made it is directed to the sound, broad discretion of the trial judge, who because of his contact with the trial and his observation of the behavior of those upon whose testimony the finding of fact must be based is better positioned than any other one person fully to comprehend the processes by which the ultimate decision of the triers of fact, the jurors, is reached.

Cloud v. Fallis, 110 So.2d 669, 673 (Fla.1959) (citations omitted).
We reiterated the rule recently in State v. Spaziano, 692 So.2d 174 (Fla.1997), wherein we stated:
A motion for a new trial is addressed to the sound judicial discretion of the trial court, and the presumption is that [it] exercised that discretion properly. And the general rule is that unless it clearly appears that the trial court abused its discretion, the action of the trial court will not be disturbed by the appellate court. Id. at 177 (quoting Henderson v. State, 135 Fla. 548, 562, 185 So. 625, 630 (1938) (Brown, J., concurring specially)).
AFFIRMED.
DELL and KLEIN, JJ., concur